IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY SUE NEGRON and § | | |
| LARRY NEGRON, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | | Civil Action No. 3:12-CV-0369-N |
| § | | |
| PLIVA, INC., § | | |
| § | | |
| Defendant. § | | |

**ORDER**

This Order addresses Plaintiffs Mary Sue Negron and Larry Negron's motion to remand [10]. Because the equitable exception enumerated in *Tedford v. Warner Lambert Co.*, 327 F.3d 423 (5th Cir. 2003), does not apply to this case, the Court finds untimely Defendant PLIVA, Inc.'s ("PLIVA") removal on February 3, 2012 – over two years after Plaintiffs filed their original petition in state court. Accordingly, the Court grants Plaintiffs' motion and remands the case. The Court denies Plaintiffs' request for attorneys' fees.

**I. ORIGINS OF PLAINTIFFS' MOTION TO REMAND**

Plaintiffs' claims revolve around Mary Sue Negron's development of tardive dyskinesia, a neurological movement disorder, which Plaintiffs allege resulted from her long-term ingestion of the drug metoclopramide, also sold under the brand name Reglan®. *See* Pls.' Br. Supp. of Pls.' Mot. Remand 1 [hereinafter Pls.' Br.]. On December 10, 2009, Plaintiffs filed their original petition in Texas state court against the manufacturers of Reglan®; two manufacturers of generic metoclopramide; Dr. James D. Hakert – the doctor

who prescribed Reglan®/metoclopramide to Ms. Negron; and Dr. Hakert's medical practice group, Digestive Health Associates of Texas, P.A. ("DHAT").[1] When Plaintiffs, who are Texas residents, filed their original petition, all of the defendants were diverse except for Dr. Hakert and DHAT – a Texas resident and citizen, respectively. *See* Pls.' Original Pet. ¶¶ 2.01-2.09.

During the pendency of the state-court action, the state court granted summary judgment for several of the Pharmaceutical Defendants, Plaintiffs settled with one of the Pharmaceutical Defendants, and Plaintiffs filed three amended petitions – the current pleading being Plaintiffs' third amended petition. Def. PLIVA's Notice Removal 2-3 [1]; Def. PLIVA's Resp. 3 n.2 [19]; *see* Pls.' Br. 5-7. Plaintiffs' third amended petition maintains claims against only PLIVA – one of the original Pharmaceutical Defendants and a manufacturer and/or distributor of Reglan®/metoclopramide;[2] Dr. Hakert; and DHAT. In Plaintiffs' Third Amended Petition, Plaintiffs allege the same claims against PLIVA, Dr. Hackert, and DHAT that they alleged in their Original Petition.

---

[1] These original defendants were: Wyeth Pharmaceuticals, Inc.; Wyeth, Inc.; Pfizer, Inc.; Schwarz Pharma, Inc.; Alavan Pharmaceuticals, LLC; Teva Pharmaceuticals USA, Inc.; and PLIVA (collectively, the "Pharmaceutical Defendants"), as well as Dr. Hakert and DHAT.
   In their original petition, Plaintiffs alleged causes of action against the Pharmaceutical Defendants, including PLIVA, for negligence, strict liability, breach of the warranty of merchantability, breach of the warranty of fitness for a particular purpose, misrepresentation, suppression of evidence, and fraud and against Dr. Hakert and DHAT for negligence. *See* Def. PLIVA's App. to Def. PLIVA's Notice Removal, Ex. 4, Pls.' Original Pet. ¶¶ 8.01-8.25 [2-1] [hereinafter Pls.' Original Pet.]. Plaintiffs also alleged that all Defendants were grossly negligent. *Id.* at "Gross Negligence of All Defendants," p. 26.

[2] *See* Pls.' App. to Pls.' Mot. Remand, Ex. E, Pls.' Third Am. Pet. ¶ 7.02 [hereinafter Pls.' Third Am. Pet.] [12-1].

On January 13, 2012, Dr. Hakert and DHAT filed a no-evidence motion for summary judgment in state court. Plaintiffs subsequently settled with Dr. Hakert and DHAT. *See* Pls.' Br. 8. Plaintiffs therefore did not oppose the motion for summary judgment, but rather, Plaintiffs, Dr. Hakert, and DHAT signed an agreed order granting the motion. Def. PLIVA's Resp. 12; *see* Def. PLIVA's App. to Def. PLIVA's Notice Removal, Ex. 154, at 62-63 [6-5]. The state court entered the agreed order on January 30, 2012. *See* Def. PLIVA's App. to Def. PLIVA's Notice Removal, Ex. 154, at 62-63.

On February 3, 2012, PLIVA removed the case to this Court based on diversity of citizenship between itself and Plaintiffs pursuant to 28 U.S.C. §§ 1332, 1441(c), and 1446. Def. PLIVA's Notice Removal 3-7. PLIVA claims that its removal is exempt from the one-year limitation on removals based on diversity found in 28 U.S.C. § 1446(b) pursuant to the Fifth Circuit's equitable exception to the one-year filing requirement established in *Tedford* because "Plaintiffs did not intend to pursue their claim against non-diverse defendants Hakert and DHAT but retained them as defendants in an effort to defeat diversity." Def. PLIVA's Notice Removal 9.

Plaintiffs now move to remand, arguing that PLIVA cannot remove this case, which has been pending in state court for over two years, because removal violates the one-year limitation in section 1446(b). Pls.' Mot. Remand 2. Plaintiffs do not dispute that PLIVA is diverse from Plaintiffs or that the amount in controversy exceeds $75,000, but Plaintiffs argue that (1) they did not fraudulently join Dr. Hakert and DHAT and (2) *Tedford*'s

ORDER – PAGE 3

equitable exception does not apply. *See* Pls.' Br. 2-9. Plaintiffs also move for attorneys' fees based on PLIVA's improper removal. Pls.' Mot. Remand 3.

## II. REMOVAL STANDARDS IN THE FIFTH CIRCUIT[3]

### *A. Removal Generally*

A defendant may remove a state court suit only if the action originally could have been brought in federal court. 28 U.S.C. § 1441(a). The removing defendant bears the burden of establishing federal jurisdiction. *E.g., Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998). However, "[b]ecause removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quoting *In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).

### *B. Timeliness of Removal*

The removal statute, 28 U.S.C. § 1446(b), provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in

---

[3]On December 7, 2011, the President signed into law the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("JVCA") which amended Chapter 28 of the United States Code. *See* 28 U.S.C. § 1, *et seq.* The Court will cite to, and apply, Chapter 28 as it existed prior to the JVCA in this Order because the amendments apply only to cases that commenced in state court after January 6, 2012. *See* JVCA, Pub. L. No. 112-63, § 205. However, the Court notes that the amendment to 28 U.S.C. § 1446 codifies the *Tedford* exception and permits removal based on diversity after the one-year period if the district court finds a plaintiff has acted in bad faith to prevent removal. *See* 28 U.S.C. § 1446(b)(3)(B).

ORDER – PAGE 4

> court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

In essence, the statute provides a "two-step test" to determine whether a defendant timely removed a case. *Chapman v. Powermatic, Inc.* 969 F.3d 160, 161 (5th Cir. 1992). Under the first sentence, if the case as stated by the initial pleading is removable, a defendant must remove within thirty days of its receipt of that pleading.[4] *Id.* The second sentence applies only to cases not initially removable; it gives a defendant thirty days to remove from its receipt of an amended pleading, motion, order, or other paper "from which the defendant can ascertain that the case is removable." *Id.* However, under the second sentence, a

---

[4]Plaintiffs allege that PLIVA must establish that Plaintiffs fraudulently joined the nondiverse defendants from the suit's outset to remove. Pls.' Br. 3-4. Indeed, under the first paragraph of 1446(b) a defendant may be able to remove a case that was initially removable based on fraudulent joinder more than one year after the case commences in certain circumstances, which may or may not be applicable here. *See Badon v. J.R. Nabisco, Inc.*, 224 F.3d 382, 389-90 & n.13 (5th Cir. 2000). However, PLIVA is adamant that it did not base its removal on fraudulent joinder, *see* Def. PLIVA's Resp. 17 n.9 ("In their Motion to Remand, [P]laintiffs fundamentally misunderstand and/or misconstrue the basis of PLIVA's removal and mistakenly rely upon case law regarding improper joinder . . . ."), and the Court therefore does not address this ground for removal.

ORDER – PAGE 5

defendant may not remove a case on the basis of diversity jurisdiction more than one year after the action commences in state court.[5]  28 U.S.C. § 1441(b).

### III. THE *TEDFORD* EXCEPTION DOES NOT APPLY, AND PLIVA'S REMOVAL WAS THEREFORE UNTIMELY

In *Tedford*, the Fifth Circuit endorsed an equitable tolling exception to section 1446(b)'s one-year limit on removal of diversity cases, noting that "the time limit for removal is not jurisdictional; it is merely modal and formal and may be waived" due to the parties' conduct, including a plaintiff's forum manipulation.  327 F.3d at 426-27 (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)).  However, "*Tedford* did not attempt to set forth detailed rules or guidelines on how the courts should apply the equitable exception."  *Norfolk S. Ry. Co. v. Murphy Bros. Trucking & Constr., LLC*, 2010 WL 5175049, at *2 (W.D. La. 2010).

To determine whether to allow equitable tolling in *Tedford* itself, the Fifth Circuit analyzed each party's conduct.  It found that plaintiff Tedford engaged in clear forum manipulation where: (1) she sued several defendants in state court, including one nondiverse defendant; (2) the defendants informed Tedford of their intention to remove the case after discovering that the nondiverse defendant was not a proper party; (3) Tedford amended her petition to add a different nondiverse defendant within hours of learning that defendants intended to remove; (4) defendants timely removed, asserting fraudulent joinder, and the

---

[5]An action "commences" in Texas when the plaintiff files suit. *See* TEX. R. CIV. P. 22; *Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 (5th Cir. 2000) (citing TEX. R. CIV. P. 22). It is undisputed that Plaintiffs filed suit on December 10, 2009, over two years prior to PLIVA's removal.

district court remanded the case; (5) Tedford then signed and post-dated a notice of nonsuit as to the nondiverse defendant – without conducting any discovery against that defendant – before defendants' one-year deadline to remove expired, but she did not file the notice until after the deadline had passed, and (5) defendants finally removed the case, over one year after it had commenced in state court. *See Tedford*, 327 F.3d at 424-25. The Circuit noted that the removing defendant had "vigilantly sought to try th[e] case in federal court," removing "each time it became apparent that the right to remove existed." *Id.* at 428. And it ultimately held that,

> [w]here a plaintiff has attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights, equity may require that the one-year limit in § 1446(b) be extended. The facts of this case present just such a circumstance.

*Id.* at 428-29.

Subsequent courts, including this Court, have applied *Tedford*'s equitable exception to allow defendants to remove cases based on diversity beyond section 1446(b)'s one-year limitation. *See, e.g.*, *Brower v. Stanley*, 306 F. App'x 36, 38 (5th Cir. 2008) (unpub.) (affirming district court's application of equitable exception); *Cousins v. Wyeth Pharm., Inc.*, 2008 WL 1883932, at *2 (N.D. Tex. 2008) (Godbey, J.); *In re Propulsid Prods. Liab. Litig.*, 2007 WL 1668752, at *1 (E.D. La. 2007); *Elsholtz v. Taser Int'l, Inc.*, 410 F. Supp. 2d 505, 506-07 (N.D. Tex. 2006) (Means, J.); *Davis v. Merck & Co.*, 357 F. Supp. 2d 974, 978-79 (E.D. Tex. 2005); *In re Rezulin Prods. Liab. Litig.*, 2003 WL 21355201, at *2 (S.D.N.Y.

2003).[6]  However, the plaintiffs' conduct in these cases clearly demonstrated forum manipulation – for example, failing to serve any discovery on the nondiverse defendants, *see Propulsid*, 2007 WL 1668752, at *1; failing to secure a required expert report in complaince with state law, *see Davis*, 357 F. Supp. 2d at 976; or nonsuiting nondiverse defendants one year and five days after the case's commencement, *see Rezulin*, 2003 WL 21355201, at *1. And the nondiverse defendants in many of these cases had been vigilant in communicating their desire to remove or attempting to remove – often removing the case more than once, *see Cousins*, 2008 WL 1883932, at *1; *Davis*, 357 F. Supp. 2d at 976; *Brooks*, 2003 WL 22037730, at *1.[7]

---

[6]*See also, e.g.*, *Thomas v. Wal-Mart La., LLC*, 2012 WL 1596692, at *2 (W.D. La. 2012); *Hargrove v. Bridgestone/Firestone N. Am. Tire, LLC*, 2012 WL 692410, at *5-6 (W.D. La. 2012); *Ardoin v. Strine Lumber Co.*, 298 F. Supp. 2d 422, 425-29 (W.D. La. 2003); *Brooks v. Am. Bankers Ins. Co. of Fl.*, 2003 WL 22037730, at *1-2 (N.D. Miss. 2003).

[7]For example, in *Cousins*, this Court applied equitable tolling where it found that the plaintiff had engaged in forum manipulation.  Like Plaintiffs here, plaintiff Cousins filed suit in Texas against a medical center, her treating physicians, and multiple drug manufacturers after she allegedly developed tardive dyskinesia from taking Reglan®.  2008 WL 1883932, at *1.  After Cousins failed to serve the nondiverse defendants with an expert report as Texas law requires, the nondiverse defendants moved to dismiss the claims against them, and the diverse defendants removed to this Court – alleging improper joinder – before the state court could rule on the motion to dismiss.  *Id.*  In Cousins' first motion to remand, she claimed that she would vigorously contest the nondiverse defendants' motions to dismiss in state court upon remand.  *Id.* at *2.  The Court then remanded the case in accordance with applicable law.  However, "as soon as it appeared she was safely in state court," Cousins nonsuited the nondiverse defendants, explaining that the nonsuit "was a decision that was made in the best interest of Wanda Ruth Cousins."  *Id.* (quotation omitted).  When the diverse defendants again removed – over one year after the state court action had commenced – the Court equitably tolled section 1446(b)'s one-year limitation on removal, finding that Cousins' behavior "demand[ed] she be estopped from seeking to remand the case on the basis of the one-year limit."  *Id.*

Conversely, courts deny equitable tolling under *Tedford* where a plaintiff's "merely suspicious behavior [does not] demonstrate bad faith or forum manipulation," *Peres v. JPMorgan Chase Bank, N.A.*, 2007 WL 1944376, at *3 (N.D. Tex. 2007) (Boyle, J.); *see also, e.g.*, *Norfolk S. Ry. Co.*, 2010 WL 5175049, at *2-3; *Baby Oil, Inc. v. Cedyco Corp.*, 654 F. Supp. 2d 508, 515-17 (E.D. La. 2009); *Foster v. Landon*, 2004 WL 2496216, at *2-3 (E.D. La. 2004), and/or where a defendant is not diligent in its efforts to remove the case, *see, e.g.*, *Perez v. Lasko Prods., Inc.*, 2008 WL 608313, at *1-2 (S.D. Tex. 2008); *Edwards v. Standard Fire Ins. Co.*, 2008 WL 1832366, at *2-3 (E.D. La. 2008); *Daniel Mineral Dev't, Inc.*, 2007 WL 2315218, at *3-4 (S.D. Tex. 2007). In this vein, Judge Fallon of the Eastern District of Louisiana explained that suspicious circumstances creating only an "aroma of manipulation" are insufficient to warrant equitable tolling. *Foster v. Landon*, 2004 WL 2496216, at *2; *see also Baby Oil*, 654 F. Supp. 2d at 516.

The parties dispute the history of this case. PLIVA contends that Plaintiffs' "actions in this lawsuit consistently have been focused to and directed upon the Pharmaceutical Defendants, with only minimal lip-service paid to their purported claims against Dr. Hakert and DHAT." Def. PLIVA's Resp. 4. PLIVA first asserts that Plaintiffs did not give notice to Dr. Hakert and DHAT of their malpractice claim pursuant to Texas Civil Practice & Remedies Code § 74.051(a), citing Dr. Hakert and DHAT's answers.[8] *Id.* It also alleges (1) that Plaintiffs served standard requests for disclosure pursuant to Texas Rule of Civil

---

[8]The Court notes that failure to provide notice under section 74.051 only results in the abatement of the action against medical providers for sixty days rather than dismissal. *De Checa v. Diagnostic Ctr. Hosp., Inc.*, 852 S.W.2d 935, 938 (Tex. 1993) (citing inter alia *Schepps v. Presbyterian Hosp. of Dall.*, 652 S.W.2d 934, 938 (Tex. 1983)).

ORDER – PAGE 9

Procedure 194, interrogatories, and document requests on all parties, but, to PLIVA's knowledge, Dr. Hakert and DHAT never responded, and (2) that Plaintiffs never served an expert report on Dr. Hakert and DHAT as Texas Civil Practice & Remedies Code § 74.351 requires. *Id.* at 5. Rather, during the spring of 2010, Plaintiffs, Dr. Hakert, and DHAT entered into an agreement under Texas Rule of Civil Procedure 11 whereby the parties would, among other things, suspend discovery and the expert-report requirement "at this time." *Id.* at 6.[9] PLIVA claims that Plaintiffs subsequently stopped actively pursuing their claims against Dr. Hakert and DHAT for approximately a year, though they did designate a "jack of all trades" expert to testify regarding Dr. Hakert and DHAT when faced with a court-imposed deadline in October 2011. *Id.* at 6-7.

As further evidence of Plaintiffs' allegedly suspicious behavior, PLIVA explains that, during Ms. Negron's deposition, Ms. Negron testified that her lawyers decided to sue Dr. Hakert, rather than Ms. Negron making that decision, *id.* at 8-9, and it asserts that Plaintiffs' counsel asked few substantive questions of Dr. Hakert at his deposition related to his alleged negligence, *id.* at 9. PLIVA also points to communications – in the form of both a phone call and a proposed letter agreement under Texas Rule 11 – between its counsel and counsel for Dr. Hakert and DHAT where counsel for Dr. Hakert and DHAT (1) asked if PLIVA would enter into an agreement wherein PLIVA's expert would not render any opinions about standards of care or breaches of those standards by Dr. Hakert or DHAT and (2) represented

---

[9]PLIVA asserts that plaintiffs in other metoclopramide cases have entered into the same agreement. Def. PLIVA's Resp. 6 n.4.

that, if PLIVA agreed to this stipulation, Dr. Hakert and DHAT "could get out of the case within a week." *Id.* at 10-11.[10]

Finally, PLIVA explains that when Dr. Hakert and DHAT filed a no evidence motion for summary judgment based on Plaintiffs' alleged lack of a qualified expert against them, Plaintiffs entered into the agreed order granting summary judgment rather than oppose the motion on the basis that Plaintiffs did indeed have an expert – as disclosed in their expert disclosures. *Id.* at 11-12. PLIVA concludes that Plaintiffs' actions, when considered as a whole, demonstrate that Plaintiffs did not intend to pursue bona fide claims against Dr. Hakert and DHAT, though Plaintiffs have attempted "to mask their forum manipulation efforts." *Id.* at 14.[11]

Plaintiffs, however, explain that their pleadings "set forth clear, specific, factual and legal allegations against [Dr. Hakert and DHAT]," Pls.' Br. 5; they engaged in "significant written discovery" with Dr. Hakert and DHAT, as evidenced by both Dr. Hakert/DHAT's and Mary Sue Negron's discovery responses, which Plaintiffs attach to their motion to remand, *see* Pls.' App. to Pls.' Mot. Remand, Exs. F, G, H, pp. 63-75 [12-1], 1-22 [12-2];

---

[10]PLIVA explains that "[t]he agreement states that it is on behalf of all metoclopramide (Reglan[®] and generics) plaintiffs[] represented by plaintiffs' Texas counsel and the physician and health care provider defendants represented by Dr. Hakert [and] DHAT's counsel." Def. PLIVA's Resp. 5-6 (internal quotations omitted).

[11]PLIVA has provided some evidence supporting its allegations, including the Texas Rule of Civil Procedure 11 agreement between counsel for Dr. Hakert and DHAT and plaintiffs in another metoclopramide case, which the Court references in note 9, above, *see* Def. PLIVA's App. to Def. PLIVA's Resp., Ex. B [20-2], and an affidavit from PLIVA's national defense counsel, Rex A. Littrell, testifying to the allegations it sets forth in its response, *see* Def. PLIVA's App. to Def. PLIVA's Resp., Ex. A, Rex A. Littrell Aff. [20-1].

they designated an expert to discuss Dr. Hakert's behavior and the applicable standards of care in and produced his expert report "concerning his opinions as to the standards . . . applicable to [Dr. Hakert and DHAT], how [Dr. Hakert and DHAT] violated those standards, and how the violations caused Plaintiffs' injuries," Pls.' Br. 8; and their counsel deposed Dr. Hakert at length regarding Plaintiffs' claims, *id.* Plaintiffs also explain that, following their receipt of Dr. Hakert and DHAT's no-evidence motion for summary judgment, "Plaintiffs' counsel made a strategic decision to engage in pre-trial settlement discussions with [Dr. Hakert and DHAT]." They represent that "a confidential settlement was reached, money changed hands,[12] and Plaintiffs' case against [Dr. Hakert and DHAT] was fully resolved." *Id.* In short, Plaintiffs dispute that their conduct in the case has been anything but genuine in seeking recovery against Dr. Hakert and DHAT, as evidenced by their settlement with Dr. Hakert and DHAT where "dollars were paid" by Dr. Hakert and DHAT, *id.* at 2, and they point to their affirmative steps during suit to pursue claims against Dr. Hakert and DHAT.

Considering the totality of Plaintiffs' actions, the Court does not find that Plaintiffs' actions demonstrate clear manipulation or forum shopping sufficient to apply *Tedford*'s equitable tolling exception. As the Western District of Louisiana has explained,

> The burden is on [PLIVA], as the removing party, to establish a basis for the exercise of jurisdiction. In this case, that requires establishing grounds for equitable tolling, which ordinarily requires an egregious, clear pattern of forum manipulation. [PLIVA] offers the steps taken on the face of the record, and [Plaintiffs'] actions could be interpreted as procedural steps taken to avoid removal. But [Plaintiffs'] counsel have responded by representing to the court

---

[12]Plaintiffs state that, "[w]hile the terms of the settlement agreement remain confidential, Plaintiffs can confirm that dollars were paid by [Dr. Hakert and DHAT] as part of the consideration for resolution of their claim," Pls.' Br. 2.

ORDER – PAGE 12

> their plausible, non-manipulative explanation for the steps they took . . . . The [C]ourt finds, after consideration of the entire record, that [PLIVA] has not satisfied its burden.

*Norfolk S. Ry. Co.*, 2010 WL 5175049, at *3.

### IV. PLIVA'S REMOVAL DOES NOT WARRANT ATTORNEYS' FEES

28 U.S.C. § 1447(c) permits an award of "just costs and any actual expenses, including attorney fees, incurred as a result of improper removal." A court has considerable discretion regarding attorney fee awards in removal cases. *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). To determine whether to award fees for improper removal, a court should inquire into "whether the defendant had objectively reasonable grounds to believe the removal was legally proper" at the time the defendant removed the case; a defendant's motive for removal is irrelevant. *Id.*; *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("[W]hen an objectively reasonable basis [for removal] exists, fees should be denied." (citing *Valdes*, 199 F.3d at 292)).

Plaintiffs asks the Court to award attorneys' fees against PLIVA because PLIVA removed the case "to escape a looming trial setting" after Plaintiffs opposed PLIVA's motion to continue the state trial, Pls.' Br. 1, 11, and "misle[d] the court by omitting Plaintiffs['] petition and the salient facts of the case," *id.* at 11. However, after surveying federal law relating to *Tedford*'s equitable exception, the Court finds PLIVA's argument for removal objectively reasonable. Accordingly, the Court declines to award Plaintiffs their attorneys' fees.

### CONCLUSION

ORDER – PAGE 13

Because *Tedford*'s equitable exception to the one-year limitation on removal of diversity cases in 28 U.S.C. § 1446(b) does not apply to this case, PLIVA's removal was untimely. Accordingly, the Court orders this action remanded to the 162nd Judicial District Court of Dallas County. The Court declines to award Plaintiffs attorneys' fees.

Signed August 24, 2012.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 14